[Cite as *In re A.P.*, 2015-Ohio-206.]

STATE OF OHIO        )                    IN THE COURT OF APPEALS
                           )ss:               NINTH JUDICIAL DISTRICT
COUNTY OF MEDINA    )

IN RE: A.P.                           C.A. No.      13CA0083-M

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE No.    2010 06 DE 0023

DECISION AND JOURNAL ENTRY

Dated: January 26, 2015

BELFANCE, Presiding Judge.

{¶1} Appellant, the guardian ad litem for the minor child, appeals from a judgment of the Medina County Court of Common Pleas, Juvenile Division, that denied his motion to vacate the trial court's legal custody judgment insofar as it terminated the residual parental rights and responsibilities of the child's natural father, Jeffrey M. ("Father"). For the reasons that follow, this Court reverses and remands.

I.

{¶2} A.P., born December 28, 2008, was removed from the custody of her mother in a prior dependency case and was placed in the legal custody of her maternal grandmother. In June 2010, the trial court removed A.P. from the grandmother's custody after Medina County Job and Family Services ("MCJFS") filed this dependency case. The grandmother later moved for A.P. to be returned to her legal custody, but the trial court denied the motion and removed the

grandmother from the case plan. Eventually, MCJFS moved for, and was granted, permanent custody of A.P.

{¶3} Prior to the 2012 permanent custody hearing, Father appeared before the court and purported to voluntarily surrender his parental rights to MCJFS. According to the trial court's March 2012 judgment, it accepted Father's voluntarily surrender pursuant to R.C. 5103.15(B)(1), which authorizes written agreements to surrender parental rights to children services agencies, if approved by the juvenile court.

{¶4} The grandmother appealed and this Court reversed the permanent custody judgment because the trial court had erred in removing the grandmother from the case plan and denying her the opportunity to be reunified with A.P. *See In re A.P.*, 9th Dist. Medina No. 12CA0022-M, 2012-Ohio-3873, ¶ 1. On remand, by agreement of the parties, A.P. was placed in the grandmother's legal custody, with the mother retaining residual parental rights. The parties and the trial court eventually agreed that Father's March 8, 2012 surrender of his parental rights remained effective. Although Father did not participate in the proceedings, he was appointed counsel to represent him on this issue and did not raise any argument on the record for or against the ongoing termination of his parental rights and responsibilities. On January 15, 2013, the trial court journalized the ongoing termination of Father's parental rights and dismissed him as a party to this case.

{¶5} A few weeks later, the attorney then serving as A.P.'s guardian ad litem withdrew and the trial court appointed a different attorney to serve as the guardian ad litem. After the new guardian ad litem reviewed the record in this case, he filed a series of motions to challenge the trial court's order of March 8, 2012, which accepted Father's surrender of his parental rights under R.C. 5103.15(B)(1), and its order of January 15, 2013, which journalized the ongoing

termination of Father's parental rights and responsibilities. Specifically, as a representative of the child's best interest, he questioned the trial court's authority to relieve Father of his legal responsibility to pay child support when neither MCJFS nor A.P.'s grandmother had assumed that obligation. On June 25, 2014, the guardian filed a motion to vacate the trial court's judgment, insofar as it held that Father's surrender of his parental rights survived this Court's reversal of the 2012 permanent custody decision and the trial court's judgment on remand that placed A.P. in the legal custody of her grandmother.

{¶6} The trial court overruled the motions filed by the guardian ad litem, reasoning that: (1) he lacked standing to move to vacate the judgments entered on March 8, 2012 and January 15, 2013; (2) his motions were barred by the doctrines of res judicata and collateral estoppel; and (3) the motions failed on their merits  The trial court reasoned that Father had permanently surrendered his parental rights pursuant to R.C. 5103.15(B)(1), and that the termination of his rights had not been affected by this Court's reversal of the 2012 judgment or the trial court's proceedings on remand.

{¶7} The guardian ad litem appeals and raises four assignments of error, which will be rearranged for ease of review.

II.

ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED IN FINDING THAT THE GUARDIAN AD LITEM LACKED STANDING TO MOVE TO VACATE THE COURT'S JUDGMENTS OF MARCH 8, 2012 AND JANUARY 15, 2013.

{¶8} The guardian ad litem's first assignment of error is that the trial court erred in concluding that the guardian ad litem lacked standing to move to vacate the trial court's judgment under Civ.R. 60(B). We agree.

{¶9} The term "[g]uardian ad litem" refers to an individual who is appointed to protect the interests of the child and assist the trial court in its determination of a child's best interest. Juv.R. 2(O); Sup.R. 48(B)(1). The record reveals that A.P. was represented by a guardian ad litem in the trial court proceedings prior to the 2012 permanent custody hearing and during the proceedings on remand, including when the trial court placed A.P. in the grandmother's legal custody and continued the termination of Father's parental rights and responsibilities.

{¶10} Juv.R. 2(Y) explicitly defines a "[p]arty" to a juvenile court proceeding to include the child's guardian ad litem. Although the trial court later appointed a different individual to serve in that fiduciary capacity, the record is clear that a guardian ad litem had been a party throughout these proceedings as a representative of A.P.'s best interest, which he was seeking to protect by asking the trial court to reinstate Father's parental responsibility to pay child support.

{¶11} By its explicit terms, Civ.R. 60(B) authorizes any "party" to the trial court proceedings to seek relief from judgment. *See* Civ.R. 60(B); *In re J.W.*, 9th Dist. Summit No. 26874, 2013-Ohio-4368, ¶ 13 (holding that "a movant has standing to seek relief under Civ.R. 60(B) if that person was a party to the final judgment."). Because the trial court erred in concluding that the guardian ad litem lacked standing to seek relief from judgment under Civ.R. 60(B), the first assignment of error is sustained.

ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED IN FINDING THAT THE GUARDIAN AD LITEM'S MOTIONS OF MAY 14, 2013, JUNE 11, 2013, AND JUNE 25, 2013 ARE BARRED BY RES JUDICATA AND COLLATERAL ESTOPPEL.

{¶12} In its judgment denying the motion for relief from judgment, the trial court also concluded that the guardian ad litem's motions were barred by the doctrines of res judicata and collateral estoppel. Although it quoted case law from another appellate district, the court did not

explain how either doctrine applied to the facts of this case. The guardian ad litem argues that the trial court erred in concluding that his attempts to vacate or correct the trial court's termination of Father's parental rights and responsibilities were barred by the doctrine of res judicata or collateral estoppel.

{¶13} The Supreme Court has emphasized that "Civ.R. 60(B) exists to resolve injustices that are so great that they demand a departure from the strict constraints of res judicata." *Bank of Am., N.A. v. Kuchta*, 141 Ohio St.3d 75, 2014-Ohio-4275, ¶ 15. It is a rule of equity that, under certain circumstances, provides for relief from a judgment, regardless of its finality. *Id.*

{¶14} The Supreme Court has further held that the doctrine of res judicata should not be strictly applied in cases involving child custody and visitation in the domestic relations context. *Kelm v. Kelm*, 92 Ohio St.3d 223, 227 (2001). Because the trial court maintains jurisdiction to revisit these types of judgments, they are "never absolutely final." *Id.* The courts "sacrifice finality and some of [their] limited judicial resources in order to secure a higher value - the best interests of the children." *Id.*

{¶15} The *Kelm* reasoning is fully applicable in this juvenile case. In this case, Father's purported surrender of custody occurred in the context of the permanent custody litigation resulting in a judgment that was reversed by this Court. A.P. was then permanently placed in her grandmother's legal custody, during which time the trial court will retain jurisdiction over issues of custody, visitation and support until the child reaches the age of 18. Without Father's participation after the reversal and remand of the permanent custody judgment, on January 15, 2013, the trial court entered an order surrendering Father's parental rights. Under these circumstances, the trial court erred in concluding that the motions of the guardian ad litem were

barred by the doctrines of res judicata and/or collateral estoppel. The second assignment of error is sustained.[1]

ASSIGNMENT OF ERROR IV

> THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN OVERRULING THE GUARDIAN AD LITEM'S MOTION FOR RELIEF FROM FINAL JUDGMENT OF JUNE 25, 2013.

**{¶16}** The guardian ad litem's fourth assignment of error is that the trial court erred in denying the Civ.R. 60(B) motion on its merits. To prevail on a Civ.R. 60(B) motion to vacate judgment, a movant must demonstrate: (1) a meritorious defense or claim to present if relief is granted; (2) that he is entitled to relief under one of the grounds stated in Civ.R. 60(B); and (3) that the motion is made within a reasonable time. *GTE Automatic Elec., Inc. v. ARC Industries, Inc.,* 47 Ohio St.2d 146, 150 (1976). The determination of whether relief should be granted is within the sound discretion of the trial court. *Griffey v. Rajan*, 33 Ohio St.3d 75, 77 (1987).

**{¶17}** The trial court denied the motion to vacate its judgment, reasoning that the guardian ad litem had failed to demonstrate that he had a meritorious claim or defense if relief from the judgment was granted. The guardian ad litem moved to vacate the trial court's January 2013 judgment insofar as it held that Father's 2012 voluntary relinquishment of his parental rights and responsibilities survived this Court's reversal of the 2012 permanent custody judgment and the trial court's subsequent placement of A.P. in the legal custody of her grandmother.

---

[1] We recognize that the guardian ad litem filed several motions in an attempt to vacate Father's permanent surrender of custody. Although the Ohio Supreme Court has held that res judicata precludes the filing of successive Civ.R. 60(B) motions based upon facts and grounds that were or could have been raised in a prior Civ.R. 60(B) motion, it has not applied the doctrine to an initial attempt to collaterally attack a judgment under Civ.R. 60(B). *See, e.g, Harris v. Anderson,* 109 Ohio St.3d 101, 2006-Ohio-1934, ¶ 8. Our focus in this matter is upon the trial court's erroneous conclusion that the guardian ad litem could not seek Civ. R. 60(B) relief under any circumstances due to the doctrines of res judicata and collateral estoppel.

**{¶18}** The trial court reasoned that Father had surrendered his parental rights in 2012 pursuant to R.C. 5103.15(B)(1), which provides an avenue by which a child's parents may agree, with court approval, to surrender their child to the permanent custody of a certified public or private agency. An agreement executed pursuant to R.C. 5103.15(B)(1) and approved by the juvenile court constitutes a binding contract, which "cannot be revoked by the parents or legal guardian absent the consent of the [children services agency]." *In re Miller*, 61 Ohio St.2d 184, 189 (1980). Consequently, because the trial court had purported to authorize the 2012 voluntary surrender of Father's parental rights pursuant to R.C. 5103.15(B)(1), and MCJFS had not agreed to revoke that surrender after the reversal of the permanent custody judgment, the trial court concluded that Father's parental rights and responsibilities remained terminated.

**{¶19}** We agree with the guardian ad litem that the trial court's legal reasoning was flawed. To begin with, the trial court erred in concluding that Father surrendered his parental rights pursuant to R.C. 5103.15(B)(1). The Ohio Supreme Court has repeatedly emphasized that R.C. 5103.15 has no application to cases in which the child has been adjudicated neglected or dependent and is under the jurisdiction of the juvenile court. *See, e.g., In re Miller*, at 189-190; *Kozak v. Lutheran Children's Aid Soc.*, 164 Ohio St. 335, 340-341 (1955).

**{¶20}** By the explicit terms of R.C. 5103.15(B)(1), an agreement to voluntarily place a child in the permanent custody of a children services agency may only be executed by parents "having custody of a child[.]" *See also Adoption Link, Inc. v. Suver*, 112 Ohio St.3d 166, 2006-Ohio-6528, ¶ 9 (explaining that R.C. 5103.15 "manifestly condition[s] any such permanent-surrender agreement on the parents * * * having custody of the child."). At the time Father purported to surrender his parental rights to then three-year-old A.P., she was in the temporary

custody of MCJFS. Because Father did not have custody of A.P. at the time he attempted to surrender his parental rights, he could not execute his surrender under R.C. 5103.15(B)(1).

{¶21} Moreover, because A.P. had two parents, any surrender under R.C. 5103.15(B)(1) would have also required that A.P.'s mother agree to surrender her parental rights to the agency, but she did not. R.C. 2151.011(B)(33) defines a "[p]ermanent surrender" under R.C. 5103.15 as a voluntary agreement by which *both* parents surrender their parental rights to the agency. A surrender by only one parent under R.C. 5103.15(B)(1) is authorized only "if a child has only one parent[.]" R.C. 2151.011(B)(33).

{¶22} In substance, Father's attempted voluntary surrender of his parental rights was not executed pursuant to R.C. 5103.15, but was instead consent to the ultimate 2012 permanent custody judgment. *See In re Isreal Y.*, 6th Dist. Lucas No. L-07-1030, 2007-Ohio-3685, ¶ 6-7. Because Father had already lost temporary custody of A.P. to MCJFS and was faced with a contested hearing on the permanent custody motion, he waived his parental rights and agreed that permanent custody to MCJF was in A.P.'s best interest. At that time, Father relinquished all of his parental rights, which were then transferred to MCJFS. *See* R.C. 2151.011(B)(32) (permanent custody vests in the agency "*all* parental rights, duties, and obligations[.]") (Emphasis added.).

{¶23} Aside from its misapplication of R.C. 5103.15, the trial court erred by refusing to recognize that Father's residual parental rights and responsibilities were necessarily reinstated after this Court's reversal of the 2012 permanent custody judgment. On remand, MCJFS no longer held permanent custody of A.P., nor did it hold the parents' residual rights and responsibilities. Ultimately, the trial court placed A.P. in the legal custody of her grandmother, a dispositional placement that left intact both parents' residual parental rights, privileges, and

responsibilities. *In re C.R.*, 108 Ohio St.3d 369, 2006-Ohio-1191, paragraph one of the syllabus. The grandmother did not assume Father's child support obligation because, by definition, legal custody vests in the custodian the right to physically care for the child, including the rights and responsibilities of meeting her basic daily needs for food, shelter, education, medical care, and supervision, "all subject to any residual parental rights, privileges, and responsibilities[,]" which explicitly include "the responsibility for [paying child] support." R.C. 2151.011(B)(21) and (48).

**{¶24}** As A.P.'s biological parent, Father still had a legal obligation to financially support A.P., because no one had adopted her or otherwise assumed that legal responsibility. *See* R.C. 3103.031; *Treadway v. Ballew*, 9th Dist. Summit No. 18984, 1998 WL 696888, *4 (Oct. 7, 1998). A biological father does not have the right to walk away from that legal obligation simply because he does not want to be a parent. *See Bryant v. Hacker*, 116 Ohio App.3d 860, 865 (1st Dist.1996). Consequently, this Court must conclude that the guardian ad litem presented a meritorious claim that Father's residual parental rights and responsibilities should have been reinstated during the trial court proceedings on remand.

**{¶25}** Although the trial court did not address the remaining requirements for prevailing on a Civ.R. 60(B) motion to vacate, the record reflects that they were satisfied. *See GTE Automatic Elec., Inc.*, 47 Ohio St.2d at 150. There can be little dispute that the guardian ad litem filed the motion within a reasonable time because he filed it shortly after he was appointed to replace the child's former guardian ad litem.

**{¶26}** Based on this Court's conclusion that the guardian ad litem demonstrated that he had a meritorious claim that Father's residual parental rights and responsibilities should have been reinstated, he stated grounds under Civ.R. 60(B)(5), "a catch-all provision reflecting the

inherent power of a court to relieve a person from the unjust operation of a judgment[]" when the grounds for invoking it are "substantial." *Caruso-Ciresi, Inc. v. Lohman*, 5 Ohio St. 3d 64, 66 (1983). In juvenile custody cases, the best interest of the child is to be a "paramount" concern. *In re A.B.*, 110 Ohio St.3d 230, 2006-Ohio-4359, ¶ 32. A.P., who had no ability to choose her guardian ad litem or assert her own best interest in the trial court proceedings, was originally represented by a guardian ad litem who failed to protect her from the trial court's legal error in terminating Father's residual parental rights and responsibilities.

**{¶27}** Shortly after his appointment, the new the guardian ad litem persuasively argued that the trial court's error in dismissing Father as a party to this action involved unusual and/or extraordinary operative facts. Because the trial court's error, if left uncorrected, would deprive A.P. of her right to a potential relationship with Father and her right to receive child support from him until she reaches the age of 18 in approximately 12 years, the guardian ad litem stated substantial grounds to relieve A.P. from the unjust operation of the judgment. *See Adomeit v. Baltimore*, 39 Ohio App.2d 97, 105 (8th Dist.1974).

**{¶28}** Consequently, this Court concludes that the trial court abused its discretion in denying the motion of the guardian ad litem to vacate the trial court's 2013 judgment insofar as it failed to reinstate the residual parental rights and responsibilities of Father. The fourth assignment of error is sustained and the judgment is reversed and remanded on that basis.

ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED AND COMMITTED PLAIN ERROR IN OVERRULING THE GUARDIAN AD LITEM'S MOTIONS OF MAY 14, 2013 AND JUNE 11, 2013.

**{¶29}** The third assignment of error is that the trial court erred in overruling the prior motions filed by the guardian ad litem to correct the trial court's legal error in terminating

Father's parental rights. Because this assignment of error has been rendered moot by this Court's disposition of the fourth assignment of error, it will not be addressed. *See* App.R. 12(A)(1)(c).

III.

**{¶30}** The first, second, and fourth assignments of error are sustained. The third assignment of error was not addressed. The judgment of the Medina County Court of Common Pleas, Juvenile Division, is reversed and remanded for proceedings consistent with this opinion.

Judgment reversed<br>and cause remanded.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

EVE V. BELFANCE
FOR THE COURT

WHITMORE, J.
MOORE, J.
<u>CONCUR.</u>

<u>APPEARANCES:</u>

DEREK CEK, Guardian ad Litem, Attorney at Law, for Appellant.

DANIEL GIGIANO, Attorney at Law, for Appellee.

RICHARD BARBERA, Attorney at Law, for Appellee.

JENNIFER MOORE, Attorney at Law, for Appellee.

EUGENE ELIAS, Attorney at Law, for Appellee.

ANDREW PARKER, Attorney at Law, for Appellee.

KEN and DONNA P., pro se, Appellee.